## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| ROMEO COSCIA | : |
| Plaintiff, | : |
| v. | :    CIVIL ACTION |
| | : |
| SALVATORE CAPONE | :    NO. 02-3655 (JRP) |
| Defendant. | : |

### ORDER

AND NOW, this _____ day of _____ 2002, upon

consideration of Plaintiff's Motion for Continuance of Arbitration and any response thereto, it is

hereby ORDERED that the Motion is GRANTED.  The Clerk of the Court is directed to

reschedule the Arbitration Hearing in this matter to a date not before May 14, 2003.

BY THE COURT:

_____

JOHN R. PADOVA, U.S.D.J.

FILED OCT 24 2002

## IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| ROMEO COSCIA | : | |
| Plaintiff, | : | |
| v. | : | CIVIL ACTION |
| | : | |
| SALVATORE CAPONE | : | NO. 02-3655 (JRP) |
| Defendant. | : | |
| | : | |

## MOTION TO CONTINUE ARBITRATION HEARING

Plaintiff, Romeo Coscia, through counsel, respectfully submits this Motion to Continue Arbitration Hearing.

1.     Mr. Coscia served the Complaint and Summons in this matter on June 11, 2002.

2.     Mr. Coscia served his Initial Disclosures under Fed.R.Civ.P. 26 on July 25, 2002 and Amended Disclosures on July 30, 2002.

3.     On August 12, 2002, Mr. Coscia served his First Request for Production of Documents ("First Request"), a copy of which is attached as Exhibit A.

4.     In his First Request, Mr. Coscia sought, among other things, "each document that relates to Defendant's depositing cash into bank accounts in Italy during the period January 1, 1999 to March 31, 1999" and "each document that relates to relatives of Defendant depositing cash into bank accounts in Italy during the period January 1, 1999 to March 31, 1999." See Exhibit A at Requests 3 and 4.

5.     On or about September 10, 2002, Mr. Capone served his response to Mr. Coscia's First Request.  A copy of the Response is attached as Exhibit B.

6.      Mr. Capone denied the existence of any Italian bank documents, which Mr. Coscia still believes to exist.  See Exhibit B at Responses 3 and 4.

7.      Counsel have negotiated in good faith in an attempt obtain an authorization from Mr. Capone authorization for the release of documents from the Italian bank, however, negotiations are faltering.  See Certification of Good Faith Effort attached to this Motion.

8.      Mr. Coscia has retained a lawyer in Italy to assist in obtaining these documents.

9.      Furthermore, Mr. Coscia also intends to seek the same documents regarding accounts held by Giuseppe Capone, Defendant Salvatore Capone's brother.

10.     Mr. Coscia believes that Giuseppe Capone will not consent to the release of documents from the Italian Bank, and therefore, Mr. Coscia must seek these documents under the restrictions of the Hague Convention to which Italy is a signatory.

11.     The procedures under the Hague Convention are cumbersome and time-consuming, and Mr. Coscia does not believe that he can obtain these documents under the Hague Convention in less than 180 days.

12.     The Arbitration of this matter should be meaningful and decided on all of the relevant evidence.

13.     Justice requires that Mr. Coscia been afforded sufficient time to obtain documents from the Italian bank cited in his Rule 26(a) disclosures.

**[CONTINUED ON NEXT PAGE]**

WHEREFORE, Mr. Coscia respectfully requests that this Court grant his Motion and enter the attached proposed Order

Respectfully submitted,

**EIZEN FINEBURG & McCARTHY, P.C.**

Date: October 24, 2002         By: _____

GARY J. McCARTHY, ESQUIRE
JOHN N. SALDA, ESQUIRE
JOSEPH M. ARMSTRONG, ESQUIRE
*Attorneys for Plaintiff, Romeo Coscia*

Two Commerce Square
2001 Market Street, Suite 3410
Philadelphia, PA 19103
Tel: (215) 751-9666  Fax: (215) 751-9310

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| ROMEO COSCIA | : | |
| Plaintiff, | : | |
| v. | : | CIVIL ACTION |
| | : | |
| SALVATORE CAPONE | : | NO. 02-3655 (JRP) |
| Defendant. | : | |

## CERTIFICATION OF GOOD FAITH EFFORT

I, John N. Salla, Esquire, hereby certify that I have made a good faith effort to resolve the issues raised in the forgoing Motion to Continue Arbitration by doing the following:

1.    I requested, through counsel, that Mr. Capone sign an authorization for the release of the Italian Bank documents requested by Mr. Coscia.

2.    Based on statements by Mr. Capone's counsel, I believed that Mr. Capone would sign the authorization needed to obtain the Italian Bank documents.

3.    Negotiations for obtaining this authorization appear to have broken down.

4.    I am continuing to negotiate obtaining this authorization as set forth in the letter I am sending today to counsel for Mr. Capone.

Date:  October 24, 2002

JOHN N. SALLA, ESQUIRE

# EXHIBIT A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| ROMEO COSCIA | : | |
| Plaintiff, | : | |
| v. | : | CIVIL ACTION |
| SALVATORE CAPONE | : | NO. 02-3655 (JRP) |
| Defendant. | : | |

## PLAINTIFF'S FIRST REQUEST FOR
## PRODUCTION OF DOCUMENTS DIRECTED TO EACH DEFENDANT

Plaintiff, through counsel, hereby request that Defendant respond to the within discovery requests within thirty (30) pursuant to the Federal Rules of Civil Procedure.

## INSTRUCTIONS

1.    This discovery is directed towards Salvatore Capone ("Defendant"), and his agents, representatives, employees, attorneys and other persons subject to his control.

2.    These discovery requests are continuing and require the service of supplemental answers produced in a timely manner in accordance with the Federal Rules of Civil Procedure.

3.    Each discovery request is to be answered separately and as completely as possible. The fact that investigation is continuing or that discovery is not complete shall not be used as an excuse for failure to answer each discovery request as fully as possible. The omission of any name, fact or other item of information from the answers shall be deemed a representation that such name, fact or item was not known to Defendant, his counsel or other representatives and agents at the time of service of the answers to these discovery requests.

4.    <u>Inquiry Required of Defendant</u>.  Defendant is required, in responding to these discovery requests, to obtain and furnish all information available to him and to his representatives, employees, agents, servants and/or attorneys, and to obtain and furnish all information that is in his actual or constructive possession or under his control, or under the control of his representatives, employees, agents, servants and/or attorneys.

5.    <u>Identification of a "Document"</u>.  Whenever in these discovery requests for documents and things there is a request to "identify" a "document," state or identify:

      a.    the date of the document;

      b.    the author and signatory of the document;

      c.    the addressee and all other persons receiving copies of the document;

      d.    the type of document (e.g., letter, memorandum, medical record, report, accounting record, etc.);

      e.    the title of the document;

      f.    the substance of the document;

      g.    the custodian of the document;

      h.    the present or last known location of the document; and

      i.    if the document was, but no longer is, in your possession or subject to your control, state where and in whose possession or control it is at the present time.

6.    <u>Document no Longer in Possession</u>.  If any document requested is no longer in the possession, custody or control of Defendant, state:

      a.    what was done with the document;

    b.    when such document was made;

    c.    the identity and address of the current custodian of the document;

    d.    the person who made the decision to transfer or dispose of the document; and

    e.    the reasons for the transfer or disposition.

7.    <u>Deletions from Documents</u>.  Where anything has been deleted from a document produced in response to a document request:

    a.    specify the nature of the material deleted;

    b.    specify the reason for the deletion; and

    c.    identify the person responsible for the deletion.

8.    Identification of a Natural "Person".  Whenever in these discovery requests there is a request to identify a "person," where the person is a natural person, state the person's:

    a.    name;

    b.    present or last known home and business address and telephone number(s); and

    c.    occupation or profession and job title.

9.    <u>Identification of Other "Persons"</u>.  Whenever in these discovery requests there is a request to identify a "person," where the person is an association, partnership, corporation or other entity, state or identify the person's:

    a.    name;

    b.    location of its principal place of business;

    c.    a description of the type of entity; and

     d.     telephone number.

10.   <u>Privilege as Applied to Interrogatory Response (if applicable)</u>.  Should you believe that any information requested by any of the following interrogatories (if applicable) or document requests is privileged, please identify such information, state the privilege asserted, and state the facts giving rise to such privilege so that the Court may rule on the propriety of the objection.

11.   <u>Privilege as Applied to Document Production</u>.  If objection is made to producing any document, or any portion thereof, or to disclosing any information contained therein in response to any interrogatory or document request on the basis of any claim of privilege, Defendant is requested to specify in writing the nature of such information and documents, and the nature of the privilege claimed so that the Court may rule on the propriety of the objection. In the case of documents, Defendant shall state:

     a.     the title of the document;

     b.     the nature of the document (e.g., interoffice memorandum, correspondence, report);

     c.     the author or sender;

     d.     the addressee;

     e.     the date of the initial preparation of the document;

     f.     the name of each person to whom the original or a copy was shown or circulated (other than secretarial staff);

     g.     the names appearing on any circulation list relating to the document;

     h.     the basis on which privilege is claimed; and

    i.      a summary statement of the subject matter of the document in summary

detail to permit the Court to rule on the propriety of

the objection.

## DEFINITIONS

The following definitions shall apply throughout these discovery requests:

1.     The term "you" or "yours" means Defendant or his representatives and agents, including counsel.

2.     The term "document" or "documents" as used herein is used in its broadest sense and includes, without limitation, any handwritten, printed, typed, recorded, photographic, computer generated, or other graphic matter of any kind or nature, however produced or reproduced, including but not limited to, books, ledgers, notebooks, letters, faxes, telexes, correspondence, telegrams, contracts, agreements, notes, memoranda, analyses, reports, projections, charts, graphs, drawings, photographs, videotapes, movies, audiotapes, checks, statements, statements of accounts, inter-office and intra-office communications, offers, notes of conversations, notes of meetings, notes of telephone calls, bulletins, computer programs, computer printouts, teletypes, invoices, worksheets, workpapers, diaries, calendars, minutes, reports of investigations, office manuals and any other communications fixed in a tangible medium, including but not limited to, materials stored electronically or electromagnetically as well as all mechanical and electronic sound records, or transcripts thereof, from which information can be obtained, as defined by Federal Rules of Evidence 1001(1) and (2); "document" shall also include all drafts, alterations, modifications, changes, and amendments of any of the foregoing; "document" shall also include all "documents" (as defined herein) now in the possession, custody or control of Defendant or in the possession, custody or control of the

present or former counsel, agents, employees, or others acting on behalf of the defendant, and shall also include all "documents" (as defined herein) known by defendant, to exist, whether or not ever in the possession of defendant; "document" shall also include all copies of all documents by whatever means made.

Any document, bearing on any sheet or side thereof, any marks, including without limitation, initials, stamped indicia, comments, or notations of any character that are not part of the original text, or any reproduction thereof, is to be considered a separate document.

3.     The term "person" or "persons" refer to any and all individuals and entities, including without limitation, individuals, representative persons, associates, companies, corporations, partnerships, limited partnerships, joint ventures, trusts, estates, public agencies, departments, divisions, bureaus and boards.

4.     "Persons with knowledge or information" means any and all of the following:

      a.     persons who are the source of the information upon which the answer is based; and

      b.     persons who have information that supports the answer.

5.     Whenever the context in which words are used in these discovery requests indicates or suggests that such is the intent, words in the singular shall include the plural and vice versa, and words in the masculine, feminine or neuter shall include each of the other genders.

6.     The terms "relate to", "refer to" or a form thereof, shall mean referencing, constituting, reflecting, supporting, contradicting, describing, recording, noting, embodying, containing, mentioning, studying, analyzing, discussing, evaluating, regarding, or relevant to the allegations of the defendant and/or Defendant in this civil action.

7.      As used herein, the conjunctions "and" and "or" shall be interpreted conjunctively or disjunctively, as appropriate, so as not to exclude any documents or information otherwise within the scope of these requests.

## Requests for Production

1.      Each document that relates to any loan between Plaintiff and Defendant during the period January 1, 1998 to December 31, 1999.

2.      Each document that relates to any loan that Defendant claims that Plaintiff made to any of Defendant's relatives during the period January 1, 1998 to December 31, 1999.

3.      Each document that relates to Defendant's depositing cash into bank accounts in Italy during the period January 1, 1999 to March 31, 1999.

4.      Each document that relates to relatives of Defendant depositing cash into bank accounts in Italy during the period January 1, 1999 to March 31, 1999.

5.      Each document that relates to the transfer of cash by Plaintiff to Defendant during the period January 1, 1999 to March 31, 1999.

6.      Each document that relates to the transfer of cash by Plaintiff to any of Defendant's relatives during the period January 1, 1999 to March 31, 1999.

7.      Each document that relates to the transfer of cash by Plaintiff to bank employees in Italy during the period January 1, 1999 to March 31, 1999.

8.      Each document not listed above that relates to this litigation.

9.      Each expert report for experts that Defendant intends to use at trial.

10.     Each curriculum vitae for each expert that Defendant intends to use at trial.

11.     Each document that relates to the facts alleged in Plaintiff's Amended Complaint.

12.     Each document that relates to each witness' version of the facts alleged in

Plaintiff's Amended Complaint.

13.    Each document containing Defendant's version of the facts alleged in Plaintiff's Amended Complaint.

14.    Each photograph related to the facts alleged in Plaintiff's Amended Complaint.

15.    Each recording, film, chart, diagram, sketch, graph or similar document related to the facts alleged in Plaintiff's Amended Complaint.

16.    Each document containing the names and/or home and/or business addresses of each individual who is a potential witnesses, potential expert or someone with knowledge or information related to the facts alleged in Plaintiff's Amended Complaint.

17.    Defendant's passport for the period January 1, 1999 to March 31, 1999.

18.    Each document that relates to expenses for each trip by Defendant to Italy during January 1, 1999 to March 31, 1999, including without limitation airline ticket receipts, car rentals, hotel bills, phone bills, cell phone bills, and credit card statements.

Respectfully submitted,

EIZEN FINEBURG & McCARTHY, P.C.

Date:  August 12, 2002          By: _____

GARY J. McCARTHY, ESQUIRE
JOHN N. SALLA, ESQUIRE
JOSEPH M. ARMSTRONG, ESQUIRE
Attorneys for Plaintiff, Romeo Coscia

Two Commerce Square
2001 Market Street, Suite 3410
Philadelphia, PA 19103
Tel: (215) 751-9666  Fax: (215) 751-9310

8

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ROMEO COSCIA
              Plaintiff,

       v.
                          CIVIL ACTION

SALVATORE CAPONE
              Defendant.
                          NO. 02-3655 (JRP)

## CERTIFICATE OF SERVICE

I, Joseph M. Armstrong, Esquire, hereby certify that on the date set forth below, I served

on Salvatore Capone via First Class Mail a true and correct copy of the foregoing Amended

Complaint Pursuant to Fed.R.Civ.P. 15(a).

Date: August 12, 2002

JOSEPH M. ARMSTRONG, ESQUIRE

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ROMEO COSCIA                              :

     VS                              :        CIVIL ACTION NO. 02-3655

SALVATORE CAPONE                    :

### ANSWER TO PLAINTIFF'S FIRST REQUEST
### FOR PRODUCTION OF DOCUMENTS DIRECTED TO EACH DEFENDANT

AND NOW, comes the defendant, through counsel, and responds to Plaintiff's

First Request for Production of Documents as follows:

1. There are no such documents because there was no loan.

2. There are no such documents because defendant is not aware of any loan to

defendant's relatives.

3. There are no such documents of defendant depositing cash into any bank

accounts in Italy because there were no such deposits to any bank accounts in Italy

between January 1, 1999 to March 31, 1999.

4. The defendant has no control over such documents and is unaware of any such

deposits.

5. There are no transfers of cash between the plaintiff to the defendant during this

period except for the cash funds which plaintiff brought to the defendant which were

deposited to the California Health Spa account, which records are presently in the control,

care and custody of the Receiver, John F. McKenna, Jr., Esquire.

6. The defendant is unaware of any such documents and therefore cannot produce

any documents.

7.  Plaintiff may have deposited cash to bank employees in Italy, but defendant has no knowledge of such transfers and has requested that plaintiff produce such records of at least the $200 million lire deposit that plaintiff made.

8.  The defendant is unaware of any documents that relate to this litigation.

9.  There are none.

10.  For the same reason as No. 9, there are none.

11.  There are none because there was no loan.

12.  Attached is a copy of a document received by defendant on September 7, 2002.

13.  There are none because there was no loan.

14.  There are none available.

15.  There are none available.

16.  There are none that the defendant is aware of.

17.  The defendant's passport expired, was taken by the Italian government, and he presently has a passport effective April 2001.

18.  These documents are available from the Receiver of California Health Spa, Inc., since the American Express card was utilized to finance this trip for both Romeo Coscia, Sylvia Pelosi, and Salvatore Capone.

VANGROSSI & RECCHUITI

BY: _____

FRANCIS RECCHUITI
319 Swede Street
Norristown, PA 19401-4801
(610) 279-4200
Attorney for defendant

## VERIFICATION

I, Salvatore Capone verify that the answers set forth in the foregoing Answer to Request for Production of Documents are true and correct. I understand that false statements herein are made subject to the penalties of 18 Pa. C.S. Section 4904 relating to unsworn falsification to authorities.


_____
SALVATORE CAPONE

Date: 9/9/02

DICHIARAZIONE SOSTITUTIVA DELL'ATTO DI NOTORIETA'

(Art. 47 D.P.R. del 28 DICEMBRE 2000 N. 445)
AI FINI DELL'AUTOCERTIFICAZIONE E DELLA AUTENTICA DELLA FIRMA,
RIFERENDOMI ALLA LEGGE INNANZI DETTA E SUCCESSIVE MODIFICAZIONI ED
INTEGRAZIONI, A CONOSCENZA DELLA SANZIONI PREVISTE ALL'ARTICOLO 26
DELLA LEGGE 04 GENNAIO 1968 N. 15 IL QUALE PREVEDE TESTUALMENTE CHE LE
DICHIARAZIONI MENDACI LA FALSITA' NEGLI ATTI E L'USO DI ATTI FALSI NEI CASI
PREVISTI DALLA LEGGE SONO PUNITI AI SENSI DEL CODICE DI PROCEDURA
PENALE (ART.489 C.P.) E DALLE LEGGI IN MATERIA.

Allego fotocopia documento di riconoscimento.


ONORABILE SIGN. GIUDICE DELLA CORTE FEDERALE DI PHILADELPHIA.

VISTO CHE DA PIU' DI UN ANNO RICEVO TELAFONATE DAL SIGNOR ROMEO
COSCIA PER UNA CAUSA CIVILE CHE LO STESSO CONDUCE CONTRO MIO FRATELLO
SALVATORE CAPONE,QUALCHE SETTIMANA FA MI INFORMAVA CHE MI AVEVA
MESSO COME TESTIMONE PER QUANTO MEGLIO SPECIFICO NELLA SOTTOSTANTE
DICHIARAZIONE; VISTO CHE ULTIMAMENTE I SUOI COMPORTAMENTI, ANCHE CON
PERSONE DEL MIO PAESE , DOVE ABITO, STA FACENDO PRESSIONE E QUINDI LA
PRESENTE VALE ANCHE COME DIFFIDA, E, CHE QUALSIASI COSA DOVESSE
SUCCEDERE A ME ED  ALLA MIA FAMIGLIA , LO RITENGO PERSONALMENTE
RESPONSABILE.

MI RIVOLGO A LEI PERSONALMENTE, ED ALLE AUTORITA' ITALIANE
PREPOSTE, ONDE EVITARE LA DISTORSIONE DEI FATTI E QUINDI DELLA VERITA'.

INFATTI ,QUALCHE MESE FA, IN UN TENTATIVO DI RICONCILIAZIONE,DALLO
STESSO PROPOSTOMI PER IL QUALE AVREI DOVUTO CONVINCERE MIO FRATELLO
SALVATORE , QUESTO E' AGLI ATTI . IL signor Coscia Romeo ed i sui amici investigatori
nonché i suo Avvocati, hanno presentato alla Corte cose che il sottoscritto no ha mai detto, tanto è
vero che poi si sono scusati sia con la Corte che con me, "dicendo:ci siamo sbagliati", dopo questa
fatto no ho voluto più sapere niente, ma ecco che arriva un ennesima chiamata per informarmi che
mi ha messo come teste in una causa che nemmeno conosco, oltre ad assumere per il tramite del
Suocero Varallo Angelo, con residenza a Montella ed altri che cito nell'esposto che segue,
atteggiamenti minacciosi,nonché tentativi di corruzione. Questo anche perché sono creditore di
quest'ultimo con garanzia del Coscia, per servizi resi a Lui ed allo stesso Coscia Romeo, questa
cosa è meglio chiarita in seguito, per fatti, circostanze e responsabilità. Visto anche il
comportamento, sulla base di fatti e circostanze dichiarati dal Romeo Coscia sugli ottimi rapporti
con l'investigatore della F.B.I., non mi fido più di nessuno tranne che di Lei di tutta la Corte
Federale; a questo punto è maturata la decisione di dichiarare tutta la mia verità a Lei direttamente.

IN FEDE FIMATO :GIUSEPPE CAPONE.

MONTELLA, 10/08/2002.


AUTODIDICHIARAZIONE SPONTANEA, AI SENSI DI LEGGE, RISERVATA AD
USO ACCERTAMENTI IN CORSO DELLA F.B.I. DELI U.S.A. SUL CONTO DI ROMEO
COSCIA CITTADINO AMERICANO. LA DICHIARAZIONE CHE SEGUE E' COPERTA DAL

1

SEGRETO ISTRUTTORIO E NE E' VIETATA LA PUBBLICAZIONE AL DIFUORI DEGLI
ORGANI GIUDIZIARI PREPOSTI PER IL CASO, ESCLUSO ANCHE IVESTIGATORI
PRIVATI E NON. CHIUNQUE NE FACESSE USO DIVERSO ,E' RITENUTO
RESPONSABILE E PERSEGUIBILE DAL CODICE DI .P.P. ART.13 DELLA LEGGE 675/96 E
SIMILI INTERNAZIONALI PER LA TUTELA DEL DICHIARANTE E LE PERSONE DELLA
FAMIGLIA SUOI COMPONENTI. NOMI,FATTI E PERSONE CITATE NELLA
DICHIARAZIONE CHE SEGUE SONO CITATI DALLO STESSO COSCIA ROMEO CHE CON
LA PRESENTE DIFFIDO A NON FARE TENTATIVI DI NESSUN GENERE CHE VANNO
CONTRO LA LEGGE SIA ITALIANA CHE INTERNAZIONALE, DIFFIDANDOLO TRA
L'ATRO DI NON USARE PERSONE DEL MIO LUOGO DI RESIDENZA ED ALTRI A
TITOLO DI MINACCIA O AD ESTORCERE FALSE E MENDACI DICHIARAZIONI.

Con la presente mi ricollego a quando sopra dichiarato, e il sospetto comincia a diventare
quasi certezza; infatti, alla luce delle ultime notizie sapute da testi attendibili ed oculari, dei quali in
seguito richiamo con nome e cognome, per quelli che mi hanno edotto per alcune circostanze e fatti
che possono contribuire, a mio avviso alla ricerca della verità.

L'Avvocato Emiliano Gambone, residente e domiciliato a Via Gamboni,s.n., in Montella
(Av) che da qualche mese è genero di Delli Gatti Claudio ex detenuto in Germania (D), con
residenza a Montella in Via Verteglia, mi dichiara che il suocero nel 1996/97 ebbe rapporti con il
cugino Romeo Coscia, il quale conoscendo le sue precarie condizioni economiche, ebbe ad
approfittare dello stesso per fargli alcuni prestiti puliti ed altri sporchi, con la garazia della madre
Giovannina Addesso  fu Delli Gatti, che ha una figlia sposata in U.S.A. a circa un ora e mezza di
distanza dall'abitazione del Coscia, e spesse volte va e viene dalla figlia, e quando torna porta
sempre pacchi che il Coscia manderebbe al suocero al quale è tanto affezionato!; ma ciò nonostante
per il tramite il Signor Silvio Pelosi, che separato dalla moglie, dal 1992/93 si rifugiò a Casa del
Coscia Romeo con il quale visse i primi tempi e al quale chiese aiuto per trovare lavoro, in pochi
anni ha fatto un sacco di soldi alle dipendenze o in collaborazione o sotto altra forma stando con il
Coscia Romeo, infatti, sempre a dire dell'Avvocato Gambone Emiliano, venne in Italia per mettere
le ipoteche sulla casa del Delli Gatti Claudio cugino del Coscia e suocero dell'avvocato per ben più
di $ 40.000,00+30.000$ contanti, e il Pelosi avrebbe percepito oltre alle spese sostenute circa $
16.000,00. Giustamente L'Avvocato Gambone, rifletteva ad alta voce dicendo "MA QUESTO
SILVIO PELOSI CHE VA E VIENE TROPPO SPESSO, CON LA SCUSA DELLA FAMIGLIA E
DELLA SEPARAZIONE  E PRIMA DI ANDARE A SALUTARE LA SUA FAMIGLIA, FA LA
PRIMA TAPPA SUOCERO DEL COSCIA, CHE VA A FARE? A PORTARE.....I SALUTI?.
VISTO CHE SPESSE VOLTE INSIEME VANNO ANCHE PRESSO LE BANCHE DI
MONTELLA(AV), A SALUTARE I VARI DIRETTORI, FORSE COMPIACENTI?" .

Mio zio Ernesto Delli Gatti, cittadino americano, oggi vive a Montella (AV) in Via
Vestee,n.06, con la moglie, rientrati in Italia da poco, mi ha detto tante altre cose e cioè, che è stato
con Romeo Coscia per circa 25 anni e lo conosce bene e conosce anche come si è fatto i soldi, come
li ha riciclati, servendosi, di Lui, della moglie Elisa Clemente in Delli Gatti ,di un certo Antonio
Matarazzo, Gambone Salvatore ,della sorella Marisa, della sorella Adele e Sonia, di Silvio Pelosi, e
compaesani che venivano in Italia e mandava con essi dollari al suocero, per il tramite la moglie
Varallo Rosalia mandava la fetta più grande, e poi veniva lui con lo zio Ernesto o da solo, prendeva
i soldi e li cambiava in lire per poi con il suocero aprire libretti bancari coointestati, ultimamente e
cioè ne novembre del 1999, la mogli Varallo Rosalia , dotto consiglio di un legale  prima cambiava
da dollari a lire ci poi prelevava per fare libretti di deposito al portatore non superiore a 20 milioni
di lire in quanto fino a tale somma per la legge italiana non erano censibili , tutto questo, per poi
mandarli in Svizzera dove lavorano e vivono o l cognato Varallo Felice e il marito della cognata
Marinari Salvatore i quali a loro volta a sua richiesta gli spedivano un assegno in franchi Svizzeri
sotto forma di prestito oltre a dare agli stessi incarico per investire e quindi ripulire. In cambio li

2

invitava in America e li portava ai vari casino per cambiare i pezzi da venti dollari a a pezzi di 100$ , infatti l'ultima volta che sono andati nel luglio del 2000 il Coscia ha invitato a sue spese, anche Sergio Capone, residente a Montella Via Vestee,s.n., sono stati 5 settimane, li ha portati da per tutto consumando quasi 100.000$; a las vegas, ha dato soldi da cambiare ai parenti più stretti ma non a Salvatore Capone socio e presidente della compagnia che tengono, ora e banca rotta e motivo di contestazione, anche se lo stesso Coscia Romeo per telefono , più volte ha sostenuto che quello che si è rubato gli spetta in quanto lavorava di più e i capitali investiti erano tutti suoi, soprattutto ai cognati, e in piccola parte a Sergio Capone, quest'ultimo quando è rientrato in Italia ha avuto circa 10.000$ contanti come compenso, pensate un po i cognati?, che da semplici operai fanno una vita meglio di BERLUSCONI, con case in Svizzera, ville in Abruzzo, Case aMontella, macchine da centinaia di migliaia di franchi svizzeri e chi sa quant'altro!.

Allora, dopo avere ascoltato questo, domando allo zio Ernesto, che siete venuti a fare a novembre del 2000 in Italia, i cognati dalla Svizzera, con il suocero ricoverato alla Clinica Malzoni di Avellino, il sabato sera l'hanno fatto firmare e pagando il Dott.Pecoraro, responsabile del reparto che lo tiene in cura da anni, se lo sono portati a casa per poi portarlo il lunedì mattina alle Banche di Montella a ripulire tutti i soldi più i libretti al portatore che l'Avv. Bruno aveva fatto fare alla moglie l'anno prima a suo dire per circa 55.000$; per poi, i cognati venuti appositamente Varallo Felice e Marinari Salvatore, ripartire subito per la Svizzera senza nemmeno riportare il padre e suocero di nuovo alla Clinica?, lui risponde una cosa è certa che qualche mese dopo il Signor Coscia Romeo acquistava un terreno a Philadelphia per 1.250.000$ intestandolo forse alla moglie Varallo Rosalia certamente con soldi puliti e lavati con dasch che più binco non si può, per chi non vul vedere il nero. Domanda ma dove prende questi soldi? Tiene più di trenta posti intestati a persone di fiducia tipo Silvio Pelosi, Jeimy il cugino di New YorK di cognome Coscia Devid-Bab, ed altri che nemmeno ricordo i nomi; che sono sti posti? "PROSTITUTE DOVE FANNO Pugnette e fottono a pagamento e il 75% se lo pappa lui,.HA CAPITO O NO", e dal seguito del discorso per i soldi che ha un po in svizzera un po in italia un po si prese quelli della pensione ed accompagnamento che ha la madre ed il padre hanni in Italia, si può comprare tutto, Avvocati, Investigatori ecc. ecc..

In ultimo mi dice che lui tiene assegni per diverse miglia di dollari che la moglie Elisa, ha ereditato li ha mandati in Svizzere con assegni americani regolari che ha intestato a Varallo Felice cognato del Coscia Romeo, in cambio di qualche contante in più, così ha fatto per la Madre per circa 60.000$, ebbene ha questo punto a detto seconda la legge Americana finché non trovano questi soldi, e chiudono le fondi da dove vengono, il caro nipote Romeo Coscia farà tante cause civili , come dice sempre, fino a quanto non avrà saziato alla rovina tuo fratello Salvatore Capone, non contento comprera' altri testimoni falsi ho si inventa bugie e porterà in giudizio i tuoi nipoti che sono i figli di Salvatore Capone, Armando Clemente tuo cognato, tanto a lui che se ne frega son più di tre anni che sta sotto investigazione ha speso circa 1.000.000$ di dollari di avvocati più spese che non si sanno ma tu pensi che non ha corrotto pure l'investigatore che lo avrebbe già dovuto arrestare?.

A Questo punto sono quasi convito della mala fede di chi sta indagando e credo che vadano informati i giudici di tale situazione, per arrestare "AL CAPONE" ci misero meno tempo, con tutti i milioni di dollari che teneva!. Altri tempi!..

Questo e quello che so e questo è quello che mi hanno dichiarato, ha questo punto se così stanno le cose se dovessi dare un consiglio a mio fratello, gli direi tornatene in Italia ,che, le tue ragioni le faremo valere da qui.

In caso serve la mia testimonianza diretta sono pronto anche da subito ad andare al Consolato Americano assistito dallo stato Italiano con un legale di fiducia a giurare quanto ho innanzi raccolto ed esposto, anche con le poche prove che ho.

MONTELLA,10 AGOSTO 2002.

4

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROMEO COSCIA | : | |
| Plaintiff, | : | |
| v. | : | CIVIL ACTION |
| | : | |
| SALVATORE CAPONE | : | NO. 02-3655 (JRP) |
| Defendant. | : | |

### CERTIFICATE OF SERVICE

I, Joseph M. Armstrong, Esquire, hereby certify that on the date set forth below, I served on all interest counsel via Hand Delivery a true and correct copy of the foregoing Motion to Continue Arbitration.

Date:  October 24, 2002

JOSEPH M. ARMSTRONG, ESQUIRE